# CHARLESTON.

### STATE *v.* HENRY DENNISON.

## Submitted November 25, 1919.   Decided December 5, 1919.

1. INTOXICATING LIQUORS—*Burden of Proof That Liquor Carried Was Intoxicating.*

   That provision of section 7, ch. 32A, Code 1916, which prohibits any person from carrying liquor for another between points within the state, is expressly limited and restricted to the carriage of intoxicating liquors; and in a prosecution for violation of this section it is incumbent upon the state to prove that the liquor carried was intoxicating, unless the specific beverage is embraced within the statute declaring what liquors are to be deemed intoxicating.   (p. 264).

2. SAME—*Proof That "Liquor" is Intoxicating.*

   Where a statute (section 1, ch. 32A, Code 1916) requires the word "liquors" to be construed to embrace all malt, vinous or spirituous liquors, wine, porter, ale, beer or any other intoxicating drink, mixture or preparation of like nature, and all malt and brewed drinks, whether intoxicating or not, proof of the manufacture, sale or carriage thereof, when condemned by law, is sufficient to sustain a conviction under an indictment charging a violation of the act, without showing the alcoholic content or the intoxicating character of the liquid.   (p. 264).

3. SAME—*"Spirituous Liquors."*

   The term "spirituous liquors", as used in an enumeration of specific beverages so declared to be intoxicating, includes all forms of whiskey.   (p. 264.)

4. SAME—*Whether "Wine" or Any Other Drink, Mixture or Preparation of Like Nature is Intoxicating a Question of Fact.*

   Likewise, the term "wine" as so used includes all commercial brands of wine, but cannot, in the absence of words indicating an intent on the part of the legislature to give it a broader meaning, reasonably be construed to include other forms of

beverage to which the term "wine" is often loosely applied. Such beverages fall within the condemnation of the statute only so far as they are included within the phrase "or any other intoxicating drink, mixture or preparation of like nature", thus making the question of their intoxicating quality one of fact in each case. (p. 265).

5. CRIMINAL LAW—*Intoxicating Liquors—Proof That Liquor Sold is Not Intoxicating Admissible.*

Where, in a prosecution for the alleged violation of section 7, ch. 32A, it is incumbent upon the state to prove the intoxicating quality of the liquor carried, because not included within the enumeration of liquors declared by the legislature to be intoxicating, it may do so by proof of a general nature, or by establishing through chemical analysis that the beverage contains as much as one-half of one per cent of alcohol by volume; and if it elects the former, proof of a similar nature offered by defendant in rebuttal is material, and its exclusion is such error as necessitates reversal. (p. 266).

6. INTOXICATING LIQUORS—*Seller's Belief of Nonintoxicating Properties no Defense.*

The fact that the seller or purveyor of intoxicating liquor believed it to be non-intoxicating is no defense. (p. 265.)

Error to Circuit Court, Nicholas County.

Henry Dennison was convicted of carrying intoxicating liquor for another and he brings error.

*Reversed and remanded.*

*G. G. Duff, Wolverton & Ayers,* and *Alderson & Breckenridge,* for plaintiff in error.

*E. T. England,* Attorney General, and *Henry A. Nolte,* Assistant Attorney General, for the State.

LYNCH, JUDGE:

Convicted upon an indictment charging a violation of the provisions of section 7, ch. 32A, Code 1916, and fined and sentenced to six months' imprisonment in the county jail and to work on the public roads of the county during such period, Henry Dennison has brought the case here for review by writ of error awarded upon his petition. The specific charge averred in the indictment, demurred to, is the carrying of intoxicating liquors for J. S. Davidson from the residence of Carrie Thomas

in Richwood, Nicholas County, to Davidson's department store
in the same town and county August ——, 1916. Defendant as-
signed no grounds in support of the demurrer in the court below
or here, in briefs or otherwise, and we perceive no error in the
ruling of the court upon the sufficiency of the formal accusation.

The substance of the testimony introduced by the state upon
the trial was given by N. E. Hurd, who saw defendant with· a
shoe box in his possession approach and enter the storeroom of
Davidson from the direction of Carrie Thomas' residence, where
he then roomed. The witness followed him into the store and
inquired of Davidson what was in the box, and after having
first stated that it was none of his business, Davidson asked wit-
ness to accompany him to the basement of the store, to which
both of them went, and when there, Davidson opened the box
and showed witness what the latter testified was a bottle, with
government seal unbroken, full of Mattingly & Moore's com-
mercial brand of whiskey, which he says he took into his hands,
but did not break the seal or taste the liquor, and redelivered it
to Davidson and left the building. This testimony no witness
contradicted except as to the color and contents of the container.
He said the bottle filled with liquor was dark in color, whereas
the empty one produced by defendant at the trial of the case was
lighter in color and, according to Davidson and other witnesses
testifying for defendant, like the bottles used by Mattingly &
Moore as containers of whiskey sold by them. The one that
Hurd saw was not produced or otherwise identified and no
witness accounted for or explained its absence.

Besides the conflict as to these particulars, which difference
the testimony emphasized, defendant's witnesses also endeavored
to persuade the jury impaneled to determine the guilt or inno-
cense of the accused to believe that the seal on the bottle had
been cut so adroitly by the use of a sharp knife before Hurd ex-
amined it as to escape detection except upon close scrutiny, and
that the bottle did not contain intoxicating liquor, but did con-
tain imperfectly fermented elderberry bloom, thus producing a
mixture called elderberry wine, and as such a nonintoxicating
drink. That there was in it sufficient alcohol to produce intoxi-
cation no testimony tends to show, if we disregard for the mo-
ment the testimony introduced by the state as to the character

of the contents of the container, as testified to by Hurd, and give full force and effect to the testimony of Dennison and Davidson, which the court excluded upon motion of the state. Until pressed for a categorical answer to a question, improper because leading, propounded by defendant's counsel on direct examination, they would say only that they believed the wine, if freely imbibed, would not produce intoxication. When asked on cross-examination whether the wine would intoxicate, Davidson evasively replied: "I think I could drink a whole lot of it if I liked it." But when urged by the state for a direct answer, he replied: "I don't think so." Dennison was more positive in replying to a'similar leading question addressed to him by his counsel upon the same subject. According to Carrie Thomas, a witness called by defendant, the process employed by her in making the drink substantially was as follows: A gallon of elderberry bloom was immersed in an equal quantity of water, and the mixture scalded or boiled in some suitable vessel, to which sugar and a cake of yeast were added for the purpose of causing fermentation; and that in this instance the mixture was prepared by her and Mrs. Haynes, her sister, for defendant at his request and delivered to him at her house, where he roomed during August, 1916. Though thus briefly stated, this is a fair summary of the proof relating to the important phases of the case.

The chief ground of complaint against the conviction and sentence is the action of the court in sustaining the state's motion to exclude the testimony of Dennison and Davidson touching the intoxicating quality of the contents of the bottle. The provisions of section 7, ch. 32A, Code 1916, under which this indictment was found, are applied only to "intoxicating liquors," as defined by section 1. Hence it becomes necessary to establish the intoxicating quality of the liquid delivered by defendant to Davidson unless it is embraced within the enumerated liquors declared by the statute to be deemed intoxicating. If the bottle contained the brand of whiskey noted on the label, as to·which Hurd testified, there was no error, according to the decisions of this court, in sustaining the motion to exclude. 15 R. C. L. 376; Note, 48 L. R. A. (N. S.) 302. The term "spirituous liquors" as used in the statute includes all forms of whiskey

The same rule applies with equal force and effect to wines without distinction or discrimination as to their intoxicating quality or character or the process of distillation or fermentation by which they are produced, if, strictly speaking, they are the usual commercial wines. Such wines are within the express definition given by section 1, ch. 32A, saying: "The word 'liquors' as used in this act shall be construed to embrace all malt, vinous or spirituous liquors, wine, porter, ale, beer or any other intoxicating drink, mixture or preparation of like nature; and all malt or brewed drinks, whether intoxicating or not, shall be deemed malt liquors within the meaning of this act; and all liquids, mixtures or preparations, whether patented or not, which will produce intoxication, and all beverages containing so much as one-half of one per centum of alcohol by volume, shall be deemed spirituous liquors, and all shall be embraced in the word 'liquors' as hereinafter used in this act." Here the legislature has given a broad, general and comprehensive definition of the drinks and beverages the sale and transportation or carriage of which from one place to another within the state the statute denounces as unlawful and a violation thereof punishable by fine and imprisonment. The sale of any drink or beverage thus defined comes within the prohibition of the law.

If, therefore, the beverage carried by defendant and by him delivered to Davidson had been whiskey or any one of the commercial brands of wine produced by the ordinary process of fermentation, it clearly would be within the statutory inhibition. Such wines are included in the term "intoxicating liquors," as so defined; and to sell or carry them from one place to another within this state is an offense punishable by law; and to justify a conviction nothing more need be proved than the sale or transportation of some one or more of such brands. *Sawyer v. Botti* 147, Ia. 453; 15 R. C. L. 380. But, though the term "wine" as used in section 1 and there defined as an intoxicating liquor clearly includes all the commercial brands, it cannot, in the absence of words indicating an intent on the part of the legislature to give it a broader meaning, reasonably be construed to include within its scope all forms of beverage to which the term "wine" is often loosely applied. Some of such noncommercial beverages no doubt are intoxicating, while others may

be only nonintoxicating fruit juices. Since we cannot reasonably construe the term "wine" as used in the statute to include the latter forms, they fall within its condemnation only in so far as they are included within the phrase "or any other intoxicating drink, mixture or preparation of like nature", thus making the question of their intoxicating quality one of fact in each case. *State v. Durr,* 69 W. Va. 257; *Loid v. State,* 104 Ga. 726. The case of *State v. Durr* is cited only for the proposition just stated. Other principles therein enunciated may be subject to qualification and restriction since the enactment of section 1, ch. 32A, Code 1916, for the legislature in that section expressly defines as intoxicating the liquors therein enumerated, while the statute involved in the Durr case (section 1, ch. 32, Code 1906) did not so define them. Nothing said herein, however, should be construed as casting doubt upon the power of the legislature, as an aid in the enforcement of the prohibition laws of the state, to prohibit the sale or transportation of a beverage which in fact is not intoxicating by declaring it shall be deemed an intoxicating liquor. *Sawyer v. Botti, supra.* Section 1, ch. 32A, Code 1916, expressly states that all malt or brewed drinks, whether intoxicating or not, shall be deemed malt liquors within the meaning of the act; but the drink delivered by defendant to Davidson, assuming it not to have been whiskey, as the label on the bottle indicated it to be, was a fermented, not a malt or brewed drink.

Where it becomes necessary for the state, in a prosecution for an alleged violation of the provisions of section 7, ch. 32A, to establish the intoxicating quality of the liquor carried, because not included within the enumeration of liquors declared by the statute to be intoxicating, it may do so by testimony of a general nature, or by establishing through chemical analysis that the beverage contains so much as one-half of one per cent of alcohol by volume. The last clause of section 1, ch. 32A, provides that any beverages containing such alcoholic percentage shall be deemed spirituous liquors. The term "spirituous liquor" is used and defined by the legislature in the first part of the section as a prohibited intoxicant, and, therefore, if the proof should show the contents of the bottle to contain such proportion of alcohol, it would constitute an intoxicating liquor as so defined.

Since the state elected to prove its intoxicating quality by the former method, rather than by establishing the percentage basis. proof of a similar general nature offered by defendant in rebuttal was material and the court erred in excluding it. For whether it was intoxicating was a question of fact for jury ascertainment and not of law for the court. The fact that the seller or purveyor of intoxicating liquor believed it to be nonintoxicating is no defense. Woollen & Thornton, Law of Intoxicating Liquors, § 567.

So far as the instructions given and refused accord with the principles herein enunciated, they were properly given or improperly refused, as the case may be. Our order, therefore, will reverse the judgment, and remand the case for retrial.

*Reversed and remanded.*