452 S.E.2d 416

**Joanna Porter WHEELER, Individually, and as Administratrix, D.B.N. for the Estate of Paul David Porter, Plaintiff below/Appellant**

v.

**Joseph MURPHY, Defendant below/Appellee.**

**No. 22140.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 5, 1994.

Decided Dec. 8, 1994.

---

B. Karleton Kesner and Anita R. Casey, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for appellant.

Daniel R. Schuda and Luci R. Wellborn, Steptoe & Johnson, Charleston, for appellee.

NEELY, Justice:

Joanna Porter Wheeler, individually and as Administratrix, D.B.N. for the Estate of Paul David Porter, appeals from the 31 December 1992 Order by the Circuit Court of Kanawha

County enforcing the jury verdict returned in favor of the Appellee, Joseph Murphy. The complaint asserts that on 13 April 1989, Mr. Murphy, while a passenger in a car driven by J.C. Cottrill, substantially assisted or encouraged Mr. Cottrill's intoxication, and that Mr. Cottrill's intoxication was the proximate cause of the automobile accident killing himself, and Mr. Porter, the driver of the other vehicle, and seriously injuring Ms. Wheeler, a passenger and the owner of the vehicle driven by Mr. Porter. Mr. Cottrill and Mr. Murphy were together on the day of the accident from about 2:30 or 3:30 p.m. until the accident occurred at 9:39 p.m. The evidence reflects that although Mr. Murphy was passed out in the back seat of the vehicle at the time the accident occurred, these two friends and co-workers had been drinking together throughout the course of that afternoon and evening.

## I.

The course of events on the day of the accident was as follows: At approximately 9:39 p.m. on 13 April 1989, a 1986 Chevrolet "IROC" Camaro, driven by its owner, J.C. Cottrill, crossed into the left lane of Pinch Road in Kanawha County, West Virginia colliding with a 1980 Buick Rivera driven by Paul David Porter. Both Mr. Porter and Mr. Cottrill were killed as a result of the collision. Joanna Porter Wheeler, the owner of the vehicle driven by Mr. Porter, was a passenger at the time of the accident and suffered extensive injuries. An autopsy report revealed that Mr. Cottrill's blood alcohol level was 0.28 at the time the accident occurred.

Joseph Murphy was a passenger in Mr. Cottrill's vehicle when the accident occurred. Mr. Murphy and Mr. Cottrill had been together from approximately 2:30 to 3:30 p.m. that day, until the accident occurred at 9:39 p.m. Mr. Murphy and Mr. Cottrill worked together that day at Krogers and got off of work within an hour of each other. Mr. Cottrill picked Mr. Murphy up at work immediately following the end of Mr. Murphy's

shift. Mr. Murphy testified that he did not see Mr. Cottrill consume any alcohol at work on the day of the accident.

After leaving work, Mr. Cottrill and Mr. Murphy went by the bank, and then drove to Coonskin Park in Kanawha County where they were joined by Tracy Woods and Jennifer Summers. Ms. Woods and Ms. Summers rode with both men to Mr. Murphy's trailer in the vehicle driven by Mr. Cottrill. Both women testified that during the ride to Mr. Murphy's trailer, the men had a glass bottle containing a dark liquor that Ms. Woods thought to be "Wild Turkey." The women also testified that the bottle was passed from Mr. Murphy to Mr. Cottrill upon demand.[1]

Ms. Summers testified that Mr. Murphy served beer to everyone at his trailer, other than herself and Ms. Woods, including Mr. Cottrill. Ms. Woods and Ms. Summers recalled that wine was also served to everyone at Mr. Murphy's residence. The entire group spent approximately one hour at Mr. Murphy's trailer before returning to Coonskin Park. The women observed that Mr. Murphy and Mr. Cottrill continued to share alcohol during their drive back to the park. Ms. Woods and Ms. Summers left Mr. Murphy and Mr. Cottrill after spending some more time at Coonskin Park. When the women left the park, both observed that Mr. Cottrill was very drunk. In view of Mr. Cottrill's condition, Ms. Summers asked a stranger in the park to drive her the short distance to Ms. Woods' car, rather than risk riding with Mr. Cottrill.

After the women left, Mr. Cottrill drove Mr. Murphy to Terry Miller's house located near Pinch, West Virginia. When they arrived at Mr. Miller's house, Mr. Murphy had passed out in the back seat of the vehicle. Joseph Stowers and Carlotta Spangler observed Mr. Cottrill at Mr. Miller's house and testified that while Mr. Cottrill was at Mr. Miller's home he did not act intoxicated. However, Ms. Spangler did say that it looked like there was something wrong with Mr.

---

1. Although Ms. Woods testified that at times the bottle was passed between Mr. Murphy and Mr. Cottrill by her hands, she did not testify that the bottle was never passed directly between the two

men. In any event, whether the bottle passed directly from Mr. Murphy to Mr. Cottrill, or by a third-party is irrelevant to the issues before this Court.

Cottrill. Ms. Spangler further observed that Mr. Cottrill entered the house carrying a bottle of Jim Beam from which he took one drink. Mr. Cottrill did not take the bottle with him when he left Mr. Miller's house.

Mr. Stowers left the Miller residence with Mr. Cottrill and the unconscious Mr. Murphy, and was a passenger in the vehicle at the time of the accident. Mr. Stowers testified that Mr. Cottrill did not act visibly drunk, however he was driving in a highly erratic manner. Mr. Stowers stated that when Mr. Cottrill approached Route 114, he "shot out in the road" in front of a truck, and "cut a donut around the telephone pole in the funeral home parking lot and took off up the road." The accident occurred shortly thereafter.

Mr. Murphy's memory of the events leading up to the accident were hazy. He recalled one cup of an unidentified alcoholic substance being present in the vehicle. He did not remember serving his guests alcohol. However, he did admit that he became ill at Coonskin Park, and that he was drunk on the night of the accident. Although he could not say whether he passed alcohol to Mr. Cottrill while they were in the car together on this occasion, he did state that it was possible that he had done so. Furthermore, he admitted that he and Mr. Cottrill had on previous occasions, including the night before the accident, shared alcoholic beverages while driving.

## II.

Mrs. Wheeler asserts that two errors occurred during jury selection. First, that the lower court erroneously excused juror Ronald Perry, upon the court's own motion, without inquiring whether he was unable to be an impartial juror. The circuit court excused Mr. Perry after he revealed that he had campaigned for one of the local magistrates.

■ As previously set forth by this Court, " 'The true test to be applied with regard to qualifications of a juror is whether a juror can, without bias or prejudice, return a verdict based on the evidence and the court's instructions and disregard any prior opinions he may have had.' *State v. Charlot,* 157 W.Va. 994, 1000, 206 S.E.2d 908, 912 (1974)." Syl. pt. 1, *State v. Harshbarger,* 170 W.Va. 401, 294 S.E.2d 254 (1982). However, Mrs. Wheeler's counsel raised no objection to the court's decision to excuse Mr. Perry until after the verdict was rendered.[2]

■ Generally, a party seeking a new trial based on an irregularity is estopped from raising the issue unless the record reflects that the irregularity was called to the court's attention "as soon as it was first discovered or as soon thereafter as the cause of the proceeding would permit." *McGlone v. Superior Trucking Co., Inc.,* 178 W.Va. 659, 668, 363 S.E.2d 736, 745 (1987). Furthermore, *West Virginia Code* 56–6–16 [1923] provides that:

> No irregularity in any writ of the venire facias, or in the drawing, summoning, or impaneling of jurors, shall be sufficient to set aside a verdict, *unless objection specifically pointing out such irregularity was made before the swearing of the jury,* or unless the party making the objection was injured by the irregularity.

[Emphasis added.] *See McGlone, supra* (holding that a verdict will not be set aside for any irregularity in impaneling a jury unless there is a proper objection before the swearing of the jury or unless it is shown that the party making the objection was injured). Mrs. Wheeler failed to make a timely objection. Thus, she is estopped from raising this issue as a ground for reversal.

■ Mrs. Wheeler also alleges that the lower court erred in refusing to grant the her motion to strike juror Robert Rife for cause. We disagree. Mr. Rife's son had been seriously injured in an automobile accident while driving under the influence of alcohol. There were no passengers involved. The appellant makes no claim that Juror Rife's presence compromised the impartiality of the jury. Instead, Mrs. Wheeler makes the unusual argument that because the court dismissed another Juror, Mr. Strickland, on its own motion, it was error to refuse the Appellant's

**2.** Appellant did not object until filing a Motion to Set Aside the Jury Verdict and For New Trial, denied by 11 May 1993 Order of the Circuit Court of Kanawha County.

Motion to strike Mr. Rife. We find this argument without merit.

In *State v. Finley,* 177 W.Va. 554, 355 S.E.2d 47 (1987) we held that all that is required by a circuit court when it determines that prospective jurors have been exposed to potentially prejudicial information is that the trial court "shall question or permit the questioning of the prospective jurors individually, out of the presence of the other prospective jurors, to ascertain whether the prospective jurors remain free of bias or prejudice." Syl. pt. 1, in part. The circuit court properly allowed lawyers for each party to conduct a benchside voir dire of Mr. Rife to determine if he was prejudiced or biased.

During voir dire, Mr. Rife was asked whether his son's drunk driving accident would prevent him from rendering a verdict based upon the evidence. Mr. Rife replied, "No, sir, I don't believe they would." Mr. Rife also stated, "I feel that a person who is under the influence shouldn't be driving but I understand that they do, and, you know, I don't think they should." (Response of Appellee to Petition for Appeal, Ex. 3, at 36)

Mr. Strickland, in contrast with Mr. Rife, expressly stated he was biased. During *voir dire,* Mr. Strickland revealed that his mother had been seriously injured by a drunk driver *and* that his son had injured himself in a separate accident driving while intoxicated. When asked whether those drunk driving incidents would interfere with Mr. Strickland's ability to listen to the evidence in this case, he responded, "No. I have a *very biased opinion* about drunk driving, but I am just being honest." [Emphasis added.] There was no objection to Mr. Strickland's subsequent dismissal, and there is no cause for comparison with the circuit court's treatment of juror Rife.

■ The decision to grant a motion to strike a juror for cause is within the sound discretion of the trial court. *State v. Knotts,* 187 W.Va. 795, 421 S.E.2d 917 (1992) (citing *State v. Pietranton,* 140 W.Va. 444, 84 S.E.2d 774 (1954)). The decision of the trial court shall not be disturbed unless an abuse of discretion has occurred. *State v. Carduff,* 142 W.Va. 18, 93 S.E.2d 502 (1956). Upon

reviewing excerpts of voir dire, we find no abuse of discretion occurred in this case.

The circuit court followed this Court's ruling in *Finley, supra* by allowing additional questioning by counsel out of the presence of the jury. Furthermore, Mr. Rife's responses reasonably indicate that he had the ability and intent to be a fair and impartial juror. Upon this basis the circuit court made the determination that he did not harbor prejudice or bias and refused to disqualify him *per se* because of his son's DUI accident. We believe that Mr. Rife's responses to voir dire revealed that he could render a verdict solely on the evidence and the court's instructions. Therefore, the appellant failed to establish that the circuit court judge abused his discretion in refusing to strike Mr. Rife for cause.

### III.

■ Appellant next asserts that the circuit court erred in allowing Mr. Murphy's counsel to introduce evidence of his lack of financial worth, while precluding Ms. Wheeler's counsel from introducing rebuttal evidence of Mr. Murphy's insurance coverage. In Syl. pt. 3, *Garnes v. Fleming Landfill Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991) we held that:

> When the trial court instructs a jury on punitive damages, the court should, at a minimum, carefully explain the factors to be considered in awarding punitive damages. These factors are as follows:
>
> . . .
>
> (5) the final financial position of the defendant is relevant.

*Accord* Syl. pt. 14, *TXO Production Corp. v. Alliance Resources Corp.,* 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'm* — U.S. ——, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). Therefore, defense counsel was properly permitted to introduce evidence of Mr. Murphy's financial position in response to Mrs. Wheeler's claim for punitive damages.

In *TXO, supra* we recognized that the wealth of a defendant is a relevant consideration for the jury when considering the issue of punitive damages. *Accord Slack v. Kanawha County Housing and Redevelopment Authority,* 188 W.Va. 144, 156, 423 S.E.2d

547, 559 (1992). During the defense case in chief, Mr. Murphy testified that he lived with his parents and he had no additional income beyond the $300 to $320 a week he made working at Krogers. He had five dollars ($5) in a savings account, and the only vehicle he owned was a 1988 Chevrolet Sprint without a motor or a transmission.

The appellant argues that this testimony was introduced to engage the sympathy of the jury by highlighting Mr. Murphy's apparent inability to satisfy any judgment the jury might impose. We recognized the use of this litigation strategy with approval in *Slack, supra,* stating that "[i]n some cases, the defendant may wish to demonstrate its meager financial status as a way of holding down a punitive damage award." However, this court has never addressed the propriety of *plaintiff's counsel* offering proof of the defendant's insured status *in rebuttal,* to be considered by the jury when awarding punitive damages.

After reviewing Rules 411 and 611(a) of the *West Virginia Rules of Evidence* ("*WVRE*") [1994], we find that the circuit court's refusal to allow the plaintiff to introduce evidence of Mr. Murphy's liability insurance on rebuttal was an abuse of discretion. We shall address the admissibility of liability insurance and the issue of judicial discretion in allowing rebuttal evidence separately. Generally, a jury should not in any manner be informed of the insured or uninsured status of a defendant.[3] Syl. pt. 2, *Graham v. Wriston,* 146 W.Va. 484, 120 S.E.2d 713 (1961) *overruled on other grounds, Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979); *Hew-*

*ett v. Frye,* 184 W.Va. 477, 481, 401 S.E.2d 222, 226 (1990).

Courts have consistently held that evidence that a defendant carries liability insurance is not admissible to prove that he might be less cautious than an uninsured person because any judgment against him would be paid by his insurer. Franklin Cleckley, *Handbook on West Virginia Evidence,* § 4–11(A), at 425 (3rd ed. 1994). It is also inadmissible to offer proof of the defendant's impoverished status for the same purpose. *Id.* Thus, both the insured status of a defendant and his lack of wealth is irrelevant to the ultimate determination of whether the defendant was actually at fault, and so this evidence is generally ruled to be inadmissible.

Under *Graham, supra,* we held that allowing implicit or explicit reference by defense counsel to his client's uninsured status requires reversal. *See* Syl. pt. 4, *Kaiser v. Hensley,* 173 W.Va. 548, 318 S.E.2d 598 (1983)[4]. In *Graham, supra,* we concluded that:

> [T]he jury should not be appraised in any way that the defendant is not insured against liability, not only because such fact is immaterial to any proper issue in the case, but also because of the tendency such fact may have to cause the jury out of sympathy for the defendant to relieve him improperly from liability, or to return in favor of the plaintiff a verdict which is inadequate in amount.

*Graham,* 146 W.Va. at 489, 120 S.E.2d at 718. However, as we noted in *Graham,* our particular objection to defense counsel's implicit reference to his clients uninsured status was that it "could have no conceivable relevancy

---

**3.** Just as reference to a defendant's insured or uninsured status is irrelevant and inadmissible when offered on the issue of liability, evidence of a defendant's poverty offered for the same purpose is inadmissible. Franklin Cleckley, *Handbook on West Virginia Evidence,* § 4–11(A), at 425 (3rd ed. 1994). However, under Rule 411, *WVRE,* this same evidence may be admissible if relevant and offered for a purpose other than to show a person acted negligently. *Id.* at 427.

**4.** "In an action for recovery of damages arising from the operation of a motor vehicle, the jury should not in any manner be informed that the

defendant is not protected by insurance. If in such a case counsel for the defendant, in his argument addressed to the jury, states that the defendant is not protected by such insurance, or if he makes remarks clearly implying that the defendant is not so protected, his so doing will ordinarily constitute reversible error, notwithstanding the fact that the jury is instructed by the court not to consider such remarks in arriving at a verdict." Syl. pt. 2, *Graham v. Wriston,* 146 W.Va. 484, 120 S.E.2d 713 (1961) *overruled on other grounds, Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979).

to any proper issue in the case." *Graham,* 146 W.Va. at 494, 120 S.E.2d at 720; *See Kaiser,* 173 W.Va. at 551, 318 S.E.2d at 601. That is not true in this case.

In accordance with *Slack, supra,* the defense counsel chose to offer proof of his client's lack of financial worth as part of his case in chief. Under Rule 411, *WVRE* [1994] taken substantially from the federal rule:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. *This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose,* such as proof of agency, ownership, or control, if controverted, or bias or prejudice of a witness.

Under *TXO, supra,* evidence of the defendant's poverty was relevant and admissible because it was offered in response to Mrs. Wheeler's request for punitive damages. *See* Syl. pt. 2, *Wells v. Smith,* 171 W.Va. 97, 297 S.E.2d 872 (1982), *overruled on other grounds Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991); *Leach v. Biscayne Oil & Gas Co.,* 169 W.Va. 624, 628, 289 S.E.2d 197, 199 (1982). It was not offered for the purpose of determining the defendant's liability.

■ Mrs. Wheeler sought to introduce evidence that Mr. Murphy had liability insurance and the amount of his coverage as rebuttal evidence. Proof of Mr. Murphy's insured status was being offered on rebuttal as a *financial asset* that should be considered by the jury in awarding punitive damages. Thus, this evidence did not violate Rule 411, *WVRE* [1994].

■ In *TXO, supra,* where we held that the court should, at a minimum, carefully explain the factors to be considered in awarding punitive damages, we held that the *final* financial position of the defendant is relevant. The jury was told by Mr. Murphy he had no income other than what he earned from his job at Krogers. Proof of insurance was being offered to rebut any inference that Mr. Murphy's wages alone represented the total assets to be considered by the jury when deliberating on the issue of punitive damages. A defendant's net worth is relevant to

the issue of punitive damages, and in this case, where defense counsel offered evidence of Mr. Murphy's meager finances, the plaintiff's rebuttal evidence disclosing the existence and policy limits of Mr. Murphy's liability insurance is not barred by either Rules 401–403 or Rule 411, *WVRE* [1994].

■ Having ruled that evidence of the defendant's liability insurance and the amount of coverage is not excluded under Rule 411, we will now address the propriety of the circuit judge's refusal to permit plaintiff's counsel to introduce this evidence on rebuttal. Under Rule 611(a), *WVRE* [1994], identical to its federal counterpart, the circuit court judge is entitled to exercise broad discretion over the manner in which proceedings are conducted. Rule 611(a) [1994] provides:

> (a) *Control by Court.* The court shall exercise *reasonable* control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

[Emphasis added.] In *Belcher v. Charleston Area Medical Center,* 188 W.Va. 105, 422 S.E.2d 827, 832 (1992), we stated that "the trial court's discretion in permitting or excluding rebuttal evidence comes within the ambit of Rule 611(a)." However, "the most significant limitation on the court's authority under Rule 611(a) is that the action of the court must be reasonable." Cleckley, *supra,* § 6–11(A) at 767.

■ Despite the discretionary language of Rule 611(a), there are some rights associated with the order of proof that cannot be denied. Although Rule 611(a) [1994] gives the circuit court broad discretion in admitting or excluding rebuttal evidence, in *Belcher, supra,* we stated that this Court will reverse the ruling of the circuit court when there has been an abuse of discretion. We have suggested in several opinions that the plaintiff or prosecution has the right to rebut defense evidence. *State v. Dennison,* 85 W.Va. 261, 101 S.E. 458 (1919); *State v.*

*Williams,* 49 W.Va. 220, 38 S.E. 495 (1901); *Johnson v. Burns,* 39 W.Va. 658, 20 S.E. 686 (1894). "Therefore, the evidence that plaintiff is entitled to introduce must tend to deny, explain, or discredit facts and witnesses adduced by the defense during its case in reply. Refutation evidence offered by the plaintiff/prosecution after the close of the defendant's case in chief is called rebuttal." Cleckley, *supra,* § 6–11(D)(3) at 777.

■ We find that the plaintiff should be given the opportunity for rebuttal as a matter of right, when the rebuttal evidence consists of "[n]on-collateral evidence that is made material and relevant only because of the defense case". Cleckley, *supra,* § 6–11(D)(3) at 779. There is considerable confusion among lawyers and judges alike, when considering the plaintiff's right to introduce pure rebuttal evidence, (evidence offered after the close of the defendant's case to explain, or refute contradictory evidence offered by the defendant, limited in scope to matters covered in reply), compared to the case where the evidence sought to be admitted on rebuttal could have or should have been offered in the case in chief.

■ It is the admission of rebuttal evidence under the second category above which falls entirely within the discretion of the circuit court. Cleckley, *supra,* § 6–11(D)(3) at 779. The court has discretion in admitting evidence admissible in-chief, when offered in rebuttal. In *Edmiston v. Wilson,* 146 W.Va. 511, 120 S.E.2d 491 (1961), we stated that

> [A]s a general rule, the conduct of trials and the order of introducing testimony, subject to well established rules of practice and procedure, rest within the sound discretion of the trial court, and *the rule is applicable to the admissibility of evidence in rebuttal which could and should have been introduced by the plaintiff in chief.*

[Emphasis added.]; *Accord Belcher,* 188 W.Va. at 109, 422 S.E.2d at 831. We find that a plaintiff does have the right to introduce *pure* rebuttal evidence, to explain, repel, counteract, or disprove facts offered into evidence by the defendant, when the scope is properly limited to matters in reply to issues raised by the defendant.

In the *Handbook on West Virginia Evidence* Justice Cleckley considered judicial discretion under Rule 611, *WVRE* and the plaintiff's right to present rebuttal evidence.

> "[Where], the plaintiff is merely requesting an opportunity to do in rebuttal what should have been done in the case in chief ... [t]his is not true rebuttal. Rather, it is analogous to a request to permit the plaintiff to reopen its case. *On the other hand, where the court has found the evidence to be truly rebuttal, such evidence has been consistently allowed as a matter of right or within the discretion of the court.* For example, in *State v. Williams,* the court stated: 'But this is rebuttal evidence, and the prisoner had the right to give evidence to meet it.' See also *State v. Dennison,* 85 W.Va. 261, 101 S.E. 458 (1919). Similarly, in *State v. Oldaker,* 172 W.Va. 258, 304 S.E.2d 843 (1983), the court in an actual rebuttal situation that there was no abuse in permitting a witness for the state to be called in rebuttal where such witness was called to impeach the defendant's testimony and where the rebuttal by such witness was limited to impeachment. In either of the above cases, *refusal to admit this testimony would undoubtedly be error.*"

[Emphasis added.] Cleckley, *supra,* § 6–11(D)(3) at 779. We find that the circuit court's refusal to allow plaintiff's counsel to introduce evidence of Mr. Murphy's liability insurance and policy limits to rebut the defense evidence of Mr. Murphy's meager income, was an abuse of discretion.

The financial status of Mr. Murphy is proper material for the jury to consider when deliberating the punitive damage issue. When Mr. Murphy choose to offer evidence of his low income and minimal assets, plaintiff's counsel was entitled to elicit evidence on rebuttal to counteract the impression that Mr. Murphy would be unable to satisfy a large punitive damage award. The plaintiff should have been permitted to introduce the evidence of Mr. Murphy's liability insurance in order fully to explain the defendant's financial status to the jury.

■ Evidence of the defendant's liability insurance is neither irrelevant nor collateral

evidence in this case. The financial status of the defendant is directly relevant to the issue of punitive damages. When the defense offers an incomplete picture of a defendant's assets for consideration on a punitive damage issue, the plaintiff is entitled as a matter of right to rebut that evidence with evidence of the defendant's liability insurance. In Syl. pt. 2 of *Perdue v. Caswell Creek Coal & Coke Co.*, 40 W.Va. 372, 21 S.E. 870 (1895), we stated that "[w]hether plaintiff shall be allowed to give further evidence after defendant's evidence is closed is within the discretion of the trial court: and its exercise will rarely, if ever, be the ground of reversal by an appellate court. *Clearly, he is entitled to give evidence to rebut that of the defendant.*" [Emphasis added.]

■ The plaintiff was erroneously denied the right to present pure rebuttal evidence, thus denying the jury relevant information on the issue of punitive damages. This opinion is not a *carte blanche* invitation to plaintiffs' lawyers to inject liability insurance into every case. This is a very limited holding; we merely decline to encourage defense lawyers to offer evidence of their clients' poverty to influence the jury determination of punitive damage awards, while refusing the right of plaintiff's lawyers to offer evidence on rebuttal to explain more fully or refute the evidence of the defendant's financial worth. If a defendant does not offer evidence of his financial status or imply poverty, then neither may the plaintiff offer evidence of the defendant's insurance coverage either in the plaintiff's case in chief or on rebuttal. However, once the defendant offers evidence of his financial status to influence the jury on punitive damages, then the plaintiff may rebut such evidence by introducing proof of the defendant's liability insurance. The plaintiff's right of rebuttal is not defeated by the mere mention of insurance.

In this case, evidence of liability insurance is being offered in pure rebuttal, upon the punitive damages issue, for the purpose of assisting the jury in understanding the defendant's total financial worth. Under these limited circumstances, the plaintiff was entitled to offer evidence of the defendant's liability insurance on rebuttal. We find that the circuit court judge abused his discretion by refusing to allow the plaintiff to offer evidence of the defendant's liability insurance in rebuttal.

## IV.

Mrs. Wheeler also asserts that the trial court erred in allowing the following jury instructions:

### DEFENDANT'S INSTRUCTION NO. 4

In order to return a verdict for the plaintiffs *you must find both that James Cottrill was visibly intoxicated and that, knowing this,* Joseph Murphy directly and substantially encouraged and assisted James Cottrill's alcoholic impairment. If you do not find either of these facts, to be true, then you may find for the defendant Joseph Murphy.

[Emphasis added.]

### DEFENDANT'S INSTRUCTION NO. 12

You must determine whether or not James Cottrill, deceased, was operating his vehicle under the influence of alcohol and, if so, whether or not this proximately caused the accident resulting in the plaintiffs' injuries. *You must next determine whether not Joseph Murphy knew that James Cottrill was intoxicated* and then you must determine whether or not the conduct of Joseph Murphy, if any, substantially encouraged or assisted James Cottrill's alcohol impairment. If you find that Joseph Murphy did not substantially encourage or assist James Cottrill's intoxication, then you should find for Joseph Murphy.

[Emphasis added.] These instructions required that the jury find both that Mr. Cottrill was *visibly intoxicated,* and that Mr. Murphy *knew* this when he substantially encouraged or assisted Mr. Cottrill's intoxication.

■ In *Price v. Halstead,* 177 W.Va. 592, 355 S.E.2d 380 (1987), we established the standard under which a passenger in a motor vehicle may be found liable to a third party for injuries caused by the driver's intoxication.

What we discern is a proper rule is that a passenger may be found liable for injuries - -

to a third party caused by the intoxication of the driver of the vehicle in which he is riding, if the following conditions are met:

(1) the driver was operating his vehicle *under the influence of alcohol or drugs* which proximately caused the accident resulting in the third party's injuries, and

(2) the *passenger's conduct substantially encouraged or assisted the driver's alcohol or drug impairment.*

[Emphasis added.] *Id.* at 600, 355 S.E.2d at 389. Applying this standard to the facts of this case, the jury should only have been required to find that the driver was driving while under the influence of alcohol which proximately caused the accident, not that he was *visibly* intoxicated. Furthermore, there is no requirement that the passenger *know* that the driver is drunk. The passenger is liable if the jury finds that he substantially encouraged or assisted the driver's intoxication.

▮ In *Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990), we applied the *Price, supra* standard to a case where a plaintiff/passenger sued a store that sold alcohol to a minor/driver, who subsequently became drunk and crashed the vehicle injuring the plaintiff. In *Anderson,* we imposed no requirement that the driver be visibly intoxicated or that the store clerk have the knowledge that the driver was drunk when substantially encouraging or assisting the driver's intoxication.[5] This Court simply applied the rule in *Price, supra,* holding that the Plaintiff would be liable for contributory negligence if he substantially assisted and encouraged the driver's intoxication that proximately caused the accident.

▮ We find that there are no "knowledge" or "visibly intoxicated" requirements for proving a *prima facie* case of passenger liability, under the standard enunciated by this court in *Price, supra.* " 'An instruction which does not correctly state the law is erroneous and should be refused.' *State v. Collins,* 154 W.Va. 771, 180 S.E.2d 54 (1971)" Syl. pt. 3, *State v. Belcher,* 161 W.Va. 660, 245 S.E.2d 161 (1978). Accordingly, we find that the circuit court erred in issuing both Instruction No. 4, and Instruction No. 12.

▮ In order properly to perform its function, a jury must be given a correct statement of the applicable laws in the instructions issued by the court. *State v. Belcher,* 161 W.Va. at 665, 245 S.E.2d at 164–165. " 'An erroneous instruction is presumed to be prejudicial and warrants a new trial unless it appears that the complaining party was not prejudiced by such instruction.' [Citations omitted.]" Syllabus Point 6, *Ratlief v. Yokum,* 167 W.Va. 779, 280 S.E.2d 584 (1981). *Accord* Syl. pt. 3, *Cunningham v. Martin,* 170 W.Va. 411, 294 S.E.2d 264 (1982); *Birch v. Kelly,* 177 W.Va. 564, 355 S.E.2d 57 (1987); *Rodgers v. Rodgers,* 184 W.Va. 82, 95, 399 S.E.2d 664, 667 (1990); *Harris v. Matherly Machinery Inc.,* 187 W.Va. 234, 417 S.E.2d 925 (1992); *Myers v. Morgantown Health Care Corp.,* 189 W.Va. 647, 650, 434 S.E.2d 7, 10 (1993). The appellant was prejudiced by the two erroneous instructions issued by the court.

The trial transcript reveals that the issue of whether Mr. Cottrill was visibly intoxicated, and whether Mr. Murphy knew Mr. Cottrill was drunk at the time of the incident was the focal point of the defense's argument. In view of the indeterminate and confusing tes-

---

5. Here we do not mean to imply that simply serving alcohol to a patron or social guest *ipso facto* makes the server of alcohol liable for alcohol-related injuries. Obviously tavern and liquor store owners have a higher duty than social hosts, and a purveyor of alcohol must, indeed, be aware that intoxication and dangerous conduct is a foreseeable result following the consumption of alcohol. In this case, we are dealing with a defendant who is accused of substantially encouraging or assisting the commission of a violation of our motor vehicle laws, which resulted in an automobile accident that left two people dead, and seriously injured the Appellant.

In *Anderson, supra* in text, a liquor store sold alcohol to a *minor* in violation of *W.Va.Code,* 11–16–18(a)(3) [1986] (amended 1991), prohibiting the sale of beer to a person under the age of twenty-one. Similarly, in Syl. pt. 11, of *Price, supra* we held that "[t]he violation of our motor vehicle statutes is *prima facie* evidence of negligence." Thus, whenever anyone consumes alcohol *in a car* or while driving from party to party, a person *in that car* is doing something inherently dangerous when he or she aids or abets the driver's consumption of alcohol in violation of *W.Va.Code,* 17C–5–2 [1986] (amended 1994).

timony offered on these issues, it is highly conceivable that the jury's verdict in favor of the defendant was attributable to the conclusion that Mrs. Wheeler offered insufficient proof on the visible intoxication issue, and that there was not enough proof that Mr. Murphy knew Mr. Cottrill was drunk when the conduct in question occurred.

The testimony reveals that at the time of the accident Mr. Murphy was passed out in the car. He scarcely remembers anything about that day other than that there was alcohol present at times and that somehow he ended up drunk. Furthermore, witnesses offered conflicting testimony about whether Mr. Cottrill was visibly intoxicated that day, and if so, at what point his impairment became evident.

The jury was plainly and incorrectly instructed that Mr. Cottrill's visible intoxication *and* that Mr. Murphy's knowledge of the driver's inebriation were key elements necessary to prove a *prima facie* case of passenger liability. If the jury decided that both of these incorrect elements had been met, only then were they instructed to address the issue of Mr. Murphy's contribution, according to Defendant's Instruction No. 12. Thus, the issue of whether Mr. Murphy substantially assisted or contributed to Mr. Cottrill's intoxication presumably escaped deliberation.

We find that Mrs. Wheeler was prejudiced by the erroneous jury instructions. Accordingly, we reverse the jury's verdict and remand for a new trial. Based upon our decision to grant a new trial, we need not address the appellant's final assignment of error asserting that the jury verdict was unsupported by the evidence.

For the reasons stated herein, the judgment of the Circuit Court of Kanawha County is reversed and remanded for a new trial.

Reversed and remanded.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.