STATE OF WEST VIRGINIA

*v.*

MITCHELL CHARLOT

(No. 13353)

Decided July 16, 1974.

*Robert G. Wolpert* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *David P. Cleek,* Assistant Attorney General for defendant in error.

BERRY, JUSTICE:

This is an appeal by Mitchell Charlot, the defendant below and hereinafter referred to as defendant, from a final judgment of the Circuit Court of Kanawha County entered January 3, 1973 wherein the court refused to grant the defendant's petition for a writ of error and supersedeas from a judgment of the Intermediate Court of Kanawha County which imposed a sentence on the defendant of not less than one nor more than fifteen years in the penitentiary as a result of defendant's conviction for the sale of heroin. This Court granted defendant's petition for appeal on April 2, 1973 and the case was submitted for decision on May 23, 1974 upon the arguments and briefs on behalf of the respective parties.

The alleged sale of heroin for which the defendant was indicted occurred on September 24, 1971 in Charleston, West Virginia. The prosecuting witness for the state was one Greg Mosley who testified that he was hired by

Charleston Detective Ed Leonard as a special agent of the city police to make drug purchases from suspected "pushers" in an undercover capacity. The defendant was one of the suspected "pushers" who had been pointed out to Mosley. Mosley testified that about 8:40 p.m. on September 24, 1971 he approached the defendant in The American Legion Building on Christopher Street and "I asked him did he have any stuff. He said yes. He asked me how much did I want. I told him I wanted two bags so I gave him two ten dollar bills, he gave me two bags." Mosley also testified that "stuff" was one of the slang words for heroin. The "bags" of heroin consisted of small aluminum foil packets. Mosley testified he put the two packets in the right pocket of his trousers and immediately proceeded to police headquarters where he gave them to Detective Leonard. Leonard placed the packets in an envelope, marked the envelope for identification, and placed the envelope in his desk drawer. Leonard ran a field test on the contents of one of the packets which indicated that the substance was heroin. On September 28, 1971 Leonard presented the other packet to Sergeant White of the State Police Criminal Laboratory who subsequently ran chemical tests and Sergeant White testified at the trial that the packet contained heroin. The defendant was arrested approximately one month after the alleged sale took place.

On the day of the trial, the defendant moved for a continuance on the grounds that of the thirty-four jurors present from which the jury would be selected, only ten had not sat on prior drug cases during that term of court where the state's principal witnesses were the same as those witnesses who were going to testify against the defendant and the juries in the prior drug cases had returned guilty verdicts. Defendant contends the court erred in refusing to grant the continuance because many of the jurors had already expressed their opinion as to the credibility of the state's principal witnesses as evidenced by the return of guilty verdicts in the drug trials preceding the case at bar.

The defendant also contended that the court erred in overruling defendant's motion to strike the entire panel of twenty jurors who were called because thirteen of the twenty jurors had served on juries in preceding drug cases where the principal witnesses for the state had been the same witnesses as those summoned in the instant case.

During the trial, the defendant objected to the introduction of the aluminum foil packet that allegedly contained the heroin because the packet was not marked and the state failed to prove that the packet turned over to Detective Leonard by Mosley was the same packet that was ultimately tested by Sergeant White and found to be heroin.

After the state rested its case, the defendant took the stand and denied ever making a sale to Mosley. On cross-examination, the state asked the defendant whether or not he was carrying any of the aluminum foil packets at the time of his arrest and whether several of these packets were found on the defendant when he was searched at the Kanawha County jail after his arrest. The defendant replied that he was not in possession of any of the packets at the time of his arrest and that none were found on him when the search was made at the county jail. The defendant's counsel objected to this questioning, arguing that he had made a motion to suppress this evidence prior to the trial and no hearing had been afforded the defendant on the motion. The trial court allowed the state to continue but cautioned the jury that these questions would go only to the credibility of the defendant. After the defendant testified, the state on rebuttal placed a deputy sheriff on the stand who testified that he searched the defendant at the county jail and found about fifteen of the small aluminum foil packets on the defendant and that he inspected one of the packets and it contained a "white, powder type substance". Defendant contends that it was prejudicial error for the court not to have given the defendant a hearing on his motion to suppress evidence, especially after the defendant's counsel objected to the

questions asked to the defendant by the state on cross-examination.

The defendant assigns as errors the action of the trial court (1) in refusing to grant defendant's motion to suppress the evidence found on the defendant's person subsequent to his arrest and the use of such evidence for impeachment purposes; (2) in refusing to sustain the defendant's motion to exclude the packet of heroin introduced into evidence because the packet had not been properly identified; and, (3) in refusing to sustain defendant's motion for a continuance because a majority of the jurors had been members of the jury that tried similar cases and testimony of the same witnesses who were called to testify in the defendant's trial had been heard by these jurors in prior trials, and in refusing to sustain the defendant's motion to strike the entire panel of twenty jurors from which the jury would be selected for the reason that thirteen of the twenty had served in the trial of cases involving similar subject matter and the same witnesses would be used in the trial of the defendant.

The first assignment of error is not well taken because the physical evidence seized from the defendant after his arrest was never introduced in evidence during the trial. If this physical evidence were properly identified it could have been introduced in evidence because it had been obtained incident to a valid custodial arrest, and would be admissible to show a common plan or scheme in connection with the crime charged. See *United States v. Robinson*, 414 U.S. 218 and *State v. Hudson*, 128 W.Va. 655, 37 S.E.2d 553. Moreover, the defendant's contention that it was error for the trial court to admit in evidence testimony concerning the seizure of the physical evidence from the defendant after his arrest is without merit because this evidence was admitted for impeachment purposes only. This is made abundantly clear by the statement of the trial court with regard to the evidence after the defendant's counsel objected to the admission of such evidence when the court instructed the jury: "Now,

ladies and gentlemen of the jury, that question goes to the credibility of this witness only and not to his guilt or innocence in this particular case that occurred on September 24, 1971, that is being tried here today." The defendant testified in his own behalf, and on cross-examination he was asked if he had any of the aluminum foil packets similar to the one he allegedly sold to Mosley on his person when he was searched after his arrest and he stated that he had none on him at that time. The state in rebuttal introduced the testimony of a deputy sheriff who had searched the defendant after his arrest and had found several aluminum foil packets on the defendant similar to the ones he allegedly sold to the undercover agent. This was proper evidence to test the credibility of the defendant. *State v. Carduff,* 142 W.Va. 18, 93 S.E.2d 502; *State v. Adkins,* 109 W.Va. 579, 155 S.E. 669; *Walder v. United States,* 347 U.S. 62, 74 S. Ct. 354, 98 L. Ed. 503. In *State v. Carduff, supra,* the defendant, indicted for the unlawful sale of whiskey, testified in his own behalf and denied on cross-examination that at the time of his arrest, which was subsequent to the time the alleged unlawful sale occurred, he was carrying four bottles of whiskey. This evidence was contradicted on rebuttal by witnesses for the state, and it was held that such evidence was properly admitted for the purpose of impeachment of the defendant. It was held in point 4 of the syllabus of the *Carduff* case, that: "The extent of the cross-examination of a witness is a matter within the sound discretion of the trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in case of manifest abuse or injustice."

In the *Walder* case it was held that it was proper for the government to bring out on cross-examination for impeachment purposes after the defendant had testified on direct that he had never possessed any drugs that the defendant had been arrested and narcotics were found in his possession in connection with a prior prosecution, even though the evidence in the prior prosecution was illegally obtained.

The second error assigned is also without merit. It is contended by the defendant that because the undercover agent could not positively state at the trial that the packet in evidence was the one he purchased from the defendant the chain of evidence was broken and the packet was, therefore, inadmissible. This contention ignores the fact the undercover agent gave the packet to Detective Leonard soon after it was purchased, who placed it in an envelope and marked the envelope for identification purposes, and then turned the envelope containing the packet over to Sergeant White of the state police who subsequently analyzed the contents of the packet and found that it contained heroin. The chain of evidence with regard to this packet of heroin which was sold to the undercover agent was properly identified and never broken. It is generally held that when an object or article has passed through several hands while being analyzed or examined before being produced in court, it is not possible to establish its identity by a single witness, but if a complete chain of evidence is established, tracing the possession of the object or article to the final custodian, it may be properly introduced in evidence. 29 AM. JUR. 2d *Evidence* § 774.

The third error assigned is not well founded. It has been held by both state and federal courts that jurors who had served in a trial of other cases involving similar, but independent criminal offenses, and in which identical witnesses were used by the prosecution to establish the criminal acts, such jurors are not disqualified where there was no showing of prejudice or bias shown to the defendant on the part of the jurors. *State v. Carduff, supra; State v. Koski,* 101 W.Va. 477, 133 S.E. 79; *United States v. Haynes,* 398 F.2d 980; *Casias v. United States,* 315 F.2d 614. The true test to be applied with regard to the qualifications of a juror is whether a juror can, without bias or prejudice, return a verdict based on the evidence and the court's instructions and disregard any prior opinions he may have had. *State v. Dephenbaugh,* 106 W.Va. 289, 145 S.E. 634. This matter is clearly stated in point 3 of the syllabus of

the *Carduff* case, wherein it is stated: "When it appears that a juror in a subsequent criminal case can fairly and impartially act and render a just verdict upon the evidence adduced at the trial, he is not disqualified to serve as such in the subsequent case merely by reason of his service as a juror or his presence as a spectator at a prior trial of a different defendant charged with a different but similar offense, although the evidence is similar and the witnesses in behalf of the prosecution are the same in each case."

In the case of *Casias v. United States, supra,* the defendant was on trial for a narcotic offense and forty-three of the forty-four available jurors had sat on one or more narcotic trials during their service as jurors. Of the twelve jurors who were selected to try the defendant, it appears that all had served on one or more similar cases and all except one had heard the testimony of two or more of the government witnesses in similar cases. It was held that such jurors were not disqualified to serve on the jury to try the defendant.

For the reasons stated herein, the judgment of the Circuit Court of Kanawha County affirming the final judgment of the Intermediate Court of Kanawha County, is affirmed.

*Judgment affirmed.*