382 S.E.2d 322

**STATE of West Virginia**

v.

**James D. BENNETT.**

**No. 18540.**

Supreme Court of Appeals of West Virginia.

June 15, 1989.

---

James T. Kratovil, Kratovil & Kratovil, Weston, for James D. Bennett.

C. Terry Owens, Sr. Asst. Atty. Gen., Charleston, for appellee.

BROTHERTON, Chief Justice:

The appellant, James D. Bennett, was found guilty of seven counts of incest and seven counts of third degree sexual assault by a Gilmer County Circuit Court jury on July 23, 1987. Bennett subsequently received a sentence of not less than five nor more than ten years on each of the incest counts, and not less than one year nor more than five years on each of the third degree sexual assault charges, with two counts of incest and two counts of third degree sexual assault to be served consecutively, while all other counts were to be served concurrently. Bennett now appeals his conviction, alleging various errors in the proceedings below.

On March 3, 1987, a Gilmer County grand jury indicted Bennett on twenty-six criminal counts, including ten counts of incest, three counts of first-degree sexual assault, all felonies, as well as six misdemeanor counts of third-degree sexual abuse. Bennett's trial began on July 21, 1987, at which time a panel of twenty jurors was called and examined on voir dire.[1]

**1.** West Virginia Code § 56–6–12 (1966) provides     that:

An individual voir dire was subsequently conducted at the defendant's request. At the conclusion of the individual voir dire, the defense challenged five prospective jurors for cause. However, the trial judge refused to dismiss any jurors for cause, and the defendant now argues that this was reversible error. We agree that the defendant was entitled to have two of the prospective jurors struck for cause, and thus we reverse Bennett's convictions for the reasons discussed below.

■ During his individual voir dire, Timothy Law, who was nineteen years of age, revealed that he knew the defendant's children, including the alleged victim, from school and that he had heard various rumors in the community about the defendant. When the defense attorney asked Law his opinion as to whether the sentiment in Gilmer County was "pretty much against Mr. Bennett," Law responded, "Yeah, I'd say." When asked "Do you think that there's a probability or a greater chance that he did it than didn't do it?", Law again said "Yeah." Law seemed uncertain about whether he could put his prejudices against the defendant aside if he were chosen to sit on the jury, but he clearly indicated that if given the choice, he would rather not be a juror in the case.

■ The decision as to whether to grant a defendant's motion to strike jurors for cause rests within the sound discretion of the trial court. *State v. Pietranton*, 140 W.Va. 444, 84 S.E.2d 774, 783 (1954). As this Court has often recognized, the purpose of jury selection is " 'to secure jurors who are not only free from prejudice, but who are also free from the suspicion of prejudice.' " *State v. Matney*, 176 W.Va. 667, 346 S.E.2d 818, 822 (1986) (*quoting State v. West*, 157 W.Va. 209, 219, 200 S.E.2d 859, 865–66 (1973)). Should the trial

court have any doubt about a juror, such doubt must be resolved in favor of the defendant's challenge to strike the juror. *State v. West*, 157 W.Va. at 219–20, 200 S.E.2d at 866. In syllabus point 2 of *State v. Gargiliana*, 138 W.Va. 376, 76 S.E.2d 265 (1953), we stated:

> "In order that one who has formed or expressed an opinion as to the guilt or innocence of the accused may be accepted as a competent juror on such panel, his mind must be in condition to enable him to say on his *voir dire* unequivocally and without hesitation that such opinion will not affect his judgment in arriving at a just verdict from the evidence alone submitted to the jury on the trial of the case." Point 3, Syllabus, *State v. Johnson*, 49 W.Va. 684 [39 S.E. 665].

Timothy Law's responses to questioning during voir dire should have at least caused the trial court to doubt whether Law could serve without prejudice as a juror. At one point during the lengthy questioning of Law, the trial judge said to him, "Even though you think he's probably more guilty than he is innocent, you've got to put that out of your mind. Can you do that?" Law's response was "Yeah." Again, at the conclusion of this questioning, the judge asked Law, "I know you don't want to serve on the jury, and I understand that, but someone's got to serve. If you have to serve will you be fair?", to which Law answered, "I'll do my best." The trial judge then asked "Can you be fair?", and Law said "Yeah."

■ Although Law eventually said he could be fair if selected as a juror, it was hardly "unequivocally and without hesitation." Moreover, we will not ignore the other statements Law made during voir dire which clearly demonstrate not only that he was reluctant to be a juror, but also that he believed he would have difficulty

---

Either party in any action or suit may, and the court shall on motion of such party, examine on oath any person who is called as a juror therein, to know whether he is a qualified juror, or is related to either party, or has any interest in the cause, or is sensible of any bias or prejudice therein; and the party objecting to the juror may introduce any other competent evidence in support of the objec-

tion; and if it shall appear to the court that such person is not a qualified juror or does not stand indifferent in the cause, another shall be called and placed in his stead for the trial of that cause. And in every case, unless it be otherwise specially provided by law, the plaintiff and defendant may each challenge four jurors peremptorily.

setting his prejudices against Bennett aside. We do not believe that the defendant's objection to Timothy Law was unreasonable under the circumstances. This Court is of the opinion that when individual voir dire reveals that a potential juror feels prejudice against the defendant which the juror admits would make it difficult for him to be fair, and when a juror also expresses a reluctance to serve on the jury, the defendant's motion to strike the juror from the panel for cause should ordinarily be granted.[2]

■ We also find error in the trial court's refusal to strike Denzil Huff from the jury panel for cause. When the court conducted the general voir dire, Huff indicated that he had previously heard the Bennett case discussed somewhere. Later, during individual voir dire, Huff revealed that his sister-in-law was the secretary for the prosecuting attorney in the case and she had mentioned the case but had not discussed any specific details with him.

As he was ruling on the defendant's motion to strike Huff for cause, the trial judge admitted that Huff "gives me some problems." However, because Huff was individually questioned and claimed no prejudice or bias, the judge denied the defendant's motion. In syllabus point 4 of *State v. Beckett,* 172 W.Va. 817, 310 S.E.2d 883 (1983), this Court stated that:

> A potential juror closely related by blood or marriage to either the prosecuting or defense attorneys involved in the case or to any member of their respective staffs or firms should automatically be disqualified.

Further, in syllabus point 6 of *Beckett,* we recognized that:

> A prospective juror's consanguineal, marital or social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship.

In this case, prospective juror Huff was related by marriage to a member of the prosecuting attorney's staff, as his sister-in-law was the secretary for the man who was prosecuting the case. Individual voir dire was conducted in chambers, and Huff

---

**2.** The fact that the defendant later removed Timothy Law from the jury panel by exercising a peremptory strike is not relevant to our decision. We have previously recognized that:

> It is not disputed that a criminal defendant in a felony trial is entitled to exercise six peremptory strikes against a panel of twenty jurors who are free from challenge for cause under common law. Under this rule, it is reversible error to deny a valid challenge for cause even if the disqualified juror is later struck by a peremptory challenge.

*State v. Wilcox,* 169 W.Va. 142, 286 S.E.2d 257, 258–59 (1982) (citations omitted); for further discussion of the per se reversible error rule, *see, e.g., Celestine v. Blackburn,* 750 F.2d 353 (5th Cir.1984), *cert. denied,* 472 U.S. 1022, 105 S.Ct. 3490, 87 L.Ed.2d 624 (1985), *reh'g denied,* 473 U.S. 925, 106 S.Ct. 16, 87 L.Ed.2d 695 (1985); *United States v. Ricks,* 776 F.2d 455 (4th Cir.1985), *on rehearing,* 802 F.2d 731 (1986), *cert. denied sub nom. King v. United States,* 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 705 (1986); *People v. Rogers,* 690 P.2d 886 (Colo.App.1984); *Hill v. State,* 477 So.2d 553 (Fla.1985), *appeal after remand, Hill v. State,* 515 So.2d 176 (Fla. 1987), *cert. denied, Hill v. Florida,* 485 U.S. 993,

108 S.Ct. 1302, 99 L.Ed.2d 512 (1988); *State v. Comeaux,* 514 So.2d 84 (La.1987); *but see, Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), *reh'g denied,* 487 U.S. 1250, 109 S.Ct. 11, 101 L.Ed.2d 962 (1988), in which the Supreme Court, with Chief Justice Rehnquist writing for the 5–4 majority, held that although the trial court had erred in failing to excuse a juror for cause who indicated that he would "automatically" vote to impose the death penalty after a guilty verdict, such error was "cured" when the defendant used a peremptory challenge to remove this juror, even though the defendant then exhausted his peremptory challenges.

> [W]e reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. [Citations omitted.] They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.

487 U.S. at 88, 108 S.Ct. at 2278, 101 L.Ed.2d at 90.

said that he did not think that the fact that he knew the prosecutor and that his sister-in-law worked for this prosecutor would affect him as a juror.

Although Huff claimed to have no bias or prejudice against Bennett, the defense was nonetheless compelled to move that he be struck from the jury panel for cause. As we have noted before, a prospective juror may have a demonstrable prejudice or bias in a particular case without either acknowledging or admitting it.[3] "The purpose of voir dire is to assure that the defendant's right to a jury free of interest, bias or prejudice is protected and effectuated." *State v. Payne,* 167 W.Va. 252, 280 S.E.2d 72, 76 (1981).

In *State v. West,* 157 W.Va. 209, 200 S.E.2d 859 (1973), we said:

> ... [W]hen the defendant can demonstrate even a tenuous relationship between a prospective juror and any prosecutorial or enforcement arm of State government, defendant's challenge for cause should be sustained by the court. A defendant is entitled to a panel of twenty jurors who are free from exception, and if proper objection is raised at the time of empaneling the jury, it is reversible error for the court to fail to discharge a juror who is obviously objectionable. In any case where the trial court is in doubt, the doubt must be resolved in favor of the defendant's challenge, as jurors who have no relation whatsoever to the State are readily available.

157 W.Va. at 219–220, 200 S.E.2d at 866. Huff had, at the very least, a tenuous relationship to the prosecutor's secretary. The defendant's objection to Huff's presence on the jury was not unreasonable in light of this fact, and the trial judge's admitted doubt as to whether Huff should be permitted to sit on the jury should have been resolved in favor of the defendant's challenge for cause. Thus, we find that the defendant's challenge of Denzil Huff for cause should have been sustained.

Because we reverse Bennett's convictions for the trial court's failure to strike two jurors for cause, we need not address his other assignments of error. However, we are compelled to comment briefly about remarks made by the judge during the trial, and particularly a comment made by the prosecutor during his closing argument which was not objected to at trial.

■ The primary witness testifying for the defendant was Dr. Paula Robinson Arrieta. Dr. Arrieta was the pediatrician who conducted a physical examination on the alleged victim in this case on February 26, 1987, at the request of the Department of Human Services. Upon reading the record it is clear that the trial judge was angered by the difficulties defense counsel experienced when arranging the testimony of both Dr. Arrieta and Dr. Dena Adrian Kleinerman, an obstetrician and gynecologist who had not examined the alleged victim. At one point, defense counsel informed the judge that Dr. Kleinerman, who was to testify that morning, had an appointment scheduled for 1:00 p.m. that afternoon. The trial judge responded, obviously in the presence of the jury:

> That sort of burns me up. Every time we get a doctor as a witness we have to alter our schedules. Anytime I have to go to the doctor, or a member of the jury, you have to sit on your butt for three or four hours. But yes, we'll try to accommodate the doctor. Between now and 12:15 I suspect we'll have the doc-

---

**3.** In *State v. Pendry,* 159 W.Va. 738, 227 S.E.2d 210 (1976), overruled on other grounds, *Jones v. Warden, W.Va. Penitentiary,* 161 W.Va. 168, 241 S.E.2d 914 (1978), we stated:

It may not always be sufficient merely to ask a juror whether he is sensible of any bias or prejudice and to accept either his denial or claim of bias or prejudice merely because he says it. The existence of bias or prejudice or other lack of qualification is addressed in the first instance to the trial court. Although the juror's opinion is entitled to consideration, it need not always be taken to be conclusive. It may frequently become necessary for the trial court or counsel to go into particular matters which may be the subject of biased or prejudiced views in order to determine whether the juror in fact, even without his own knowledge, may have a demonstrable bias or prejudice which would operate to the disadvantage of one of the litigating parties.

*Id.* 159 W.Va. at 747, 227 S.E.2d at 217.

tor's testimony over and we'll be out around 12:30. I shouldn't have said that, but I do get irritated by the medical profession. Everything has to revolve around them.

The judge certainly must have realized that these comments were not only improper but that they should not have been directed to the jury which was about to hear this doctor's testimony. Dr. Kleinerman testified as scheduled and Dr. Arrieta followed her to the witness stand. After Dr. Arrieta testified, the jury was returned to its room while the judge fined Dr. Arrieta for "almost contempt" because of what he perceived to be her refusal to testify as scheduled earlier that morning.

 In his closing argument, prosecuting attorney James W. Perrill discussed the defense testimony of these two doctors, referring first to Dr. Kleinerman. Mr. Perrill did not refer to her by name, but instead as "the doctor who lives over at Weston, where Mr. Kratovil [the defense attorney] lives." Our concern is with the manner in which Mr. Perrill then prefaced his discussion of the testimony provided by Dr. Arrieta. He stated, "Then we have the lady from Charleston that caused us all the problem while we transported her back up here, the colored lady that came in and testified as an expert and a doctor."

Mr. Perrill's reference to Dr. Arrieta's race was unnecessary, as was his reminder to the jury that she had caused a problem for the court, especially since the problems caused by Dr. Arrieta had been discussed outside the presence of the jury. We do not condone comments such as these and would caution attorneys and judges alike from making unnecessary remarks which cast witnesses in a negative light. Although Mr. Perrill referred to Dr. Arrieta as "the colored lady" only once, it should not have been said for the obvious reason that it may be construed as an appeal to prejudice. "To raise the issue of race is to draw the jury's attention to a characteristic that the Constitution generally commands us to ignore. Even a reference that is not derogatory may carry impermissible connotations, or may trigger prejudiced respons-

es in the listeners that the speaker might neither have predicted nor intended." *McFarland v. Smith,* 611 F.2d 414, 417 (2d Cir.1979).

For the reasons discussed above, we reverse Bennett's convictions and remand this case to the Circuit Court of Gilmer County for proceedings not inconsistent with this opinion.

Reversed and remanded.