648 S.E.2d 610

**Sally BLACK, Executrix of Estate of Charles A. Black, et al., Plaintiff Below, Appellant,**

v.

**CSX TRANSPORTATION, INC., Defendant Below, Appellee.**

No. 33218.

Supreme Court of Appeals of West Virginia.

Submitted: May 22, 2007.

Decided: June 6, 2007.

Dissenting Opinion of Justice Benjamin July 25, 2007.

Concurring Opinion of Justice Starcher Aug. 8, 2007.

Robert F. Daley, Robert Peirce & Associates, P.C., Pittsburgh, PA, for the Appellant.

Luke A. Lafferre, Jason E. Roma, Huddleston Bolen LLP, Huntington, for the Appellee.

## PER CURIAM.

The appellant herein and plaintiff below, Sally Black, as Executrix of the Estate of Charles A. Black [hereinafter "Mrs. Black"], appeals from an order entered April 7, 2006, by the Circuit Court of Kanawha County.[1] In that order, the circuit court denied Mrs. Black's motion for a new trial and entered judgment for the appellee herein and defendant below, CSX Transportation, Inc. [hereinafter "CSX"], following the return of a jury verdict in favor of CSX. On appeal to this Court, Mrs. Black argues that the circuit court erred by refusing to excuse a potential juror for cause. Upon a review of the parties' arguments, the record designated for consideration on appeal, and the pertinent authorities, we reverse the circuit court's ruling and remand this case for a new trial.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts underlying the instant appeal are not disputed by the parties. Mrs. Black's husband, Charles A. Black [hereinafter "Mr. Black"], was a longtime employee of CSX. During his employment, he was exposed to asbestos, and later developed colon cancer, from which he died. Following Mr. Black's death, Mrs. Black filed a cause of action against CSX in accordance with the Federal Employer's Liability Act [hereinafter "F.E.L.A."], 45 U.S.C. § 51, *et seq.*, alleging that Mr. Black's colon cancer was caused by his exposure to asbestos during his employment with CSX.

A jury trial in this matter began on November 7, 2005. Prior to the trial, each prospective juror was asked to complete a court-approved questionnaire entitled "SUPPLEMENTAL JUROR QUESTIONNAIRE FOR F.E.L.A. ASBESTOS CASES." The final question on this form asked prospective jurors, "After completing this questionnaire, is there any reason at all that would make it difficult for you to be a juror, or that would make it difficult for you to award money damages if they were justified?" Prospective juror Edward Polack, M.D. [hereinafter "Dr. Polack"], responded on his form by checking the "Yes" answer and providing the following explanation: "A personal bias against personal injury lawyers and awarding of damages predicated on anything other than pure objective science-I would be willing to listen to the data presented but any decision on my part would be based on medical fact not emotion."

During the voir dire portion of the trial, the prospective jurors were questioned by counsel. Counsel for Mrs. Black examined Dr. Polack, which examination was conducted in the trial judge's chambers out of the presence of the other potential jurors, and Dr. Polack answered questions based upon his aforementioned questionnaire response, stating as follows:

> Mr. Daley: What do you mean by "personal bias against personal injury lawyers"?
>
> Dr. Polack: Physicians tend not to like trial lawyers.
>
> Mr. Daley: I understand that, but is there anything aside from the general physicians tend not to like plaintiffs' trial

---

1. This matter originated in the Circuit Court of Marshall County and subsequently was transferred to the Circuit Court of Kanawha County, where it was heard by the Honorable Arthur M. Recht, as a member of the West Virginia Mass Litigation Panel for F.E.L.A. Asbestos Cases.

lawyers that underlies your personal bias?

Dr. Polack: My personal bias is about asbestos, because a lot of the issues about asbestos are not science, and I'm perfectly willing to listen to the data, but I will have to be convinced predicated on scientific information, not emotional information.

Mr. Daley: Okay. You think a lot of information on asbestos is not based on pure, objective science?

Dr. Polack: Partially.

Mr. Daley: You couldn't award damages on anything other than pure, objective science based on your answer to number 46 [in the questionnaire]?

Dr. Polack: That's correct.

Thereafter, the trial court asked Dr. Polack,

The Court: The ultimate question, of course, Doctor, is simply this-you know as much about the case right now as I know. Based upon what I told you, do you believe that you'll be able to sit as a juror in this case, listen to the evidence from the witness stand, the law that will be given to you at the close of the case, and you're going to be asked to marry the facts as you determine them to the law as I give them.

Dr. Polack: Yes.

Following this line of questioning by counsel and the trial court, counsel for Mrs. Black moved to strike prospective juror Dr. Polack for cause.[2] While the trial court acknowledged that Dr. Polack's answers in his juror questionnaire "came perilously close" to disqualifying him, the court ultimately denied Mrs. Black's motion to strike.

Later in the voir dire process, Mrs. Black renewed her motion to strike Dr. Polack for cause. The trial court again acknowledged that Dr. Polack's expressed bias against personal injury lawyers was "a strong statement, extremely strong statement," and recalled Dr. Polack for further questioning:

The Court: Doctor, we asked most of the questions. I just have one question.

And that is the response that you gave, and we appreciate your candor, is that you do have a bias against personal injury lawyers.

Dr. Polack: That's correct.

The Court: Question I have, What would it take to overcome that bias, if at all?

Dr. Polack: Credibility-

The Court: Is it possible to do that, No. 1; if so, what would be [sic] take?

Dr. Polack: Credibility on the part of the source, in other words, the trial lawyer.

The Court: And the evidence?

Dr. Polack: That's correct.

The Court: So we get back really to, any verdict that you would reach would be based upon the evidence from the witness stand and the law given you by the Court?

Dr. Polack: That's correct.

After this exchange, the trial court determined that potential juror Dr. Polack should not be excused for cause. Accordingly, Mrs. Black removed Dr. Polack from the jury panel by using one of her peremptory challenges.

Upon the conclusion of the trial in this case, the jury determined that while CSX had been negligent, its actions had not caused or contributed to Mr. Black's colon cancer or his death therefrom, thus returning a verdict for CSX. Mrs. Black then filed a post-trial motion for a new trial, which motion was denied by the trial court's order of April 7, 2006. From this adverse ruling, Mrs. Black now appeals to this Court.

## II.

### STANDARD OF REVIEW

At issue in this proceeding is Mrs. Black's assignment of error alleging that the trial court erred by refusing to excuse potential juror Dr. Polack for cause. We have decided many cases presenting this identical issue and have determined that trial judges are accorded great discretion in deciding

---

2. W. Va.Code § 56-6-12 (1923) (Repl.Vol.2005) discusses juror qualifications and challenges.

For the text of this statute, see Section III, *infra.*

whether a potential juror should be excused for cause. *See, e.g.,* Syl. pt. 3, *State v. McMillion,* 104 W.Va. 1, 138 S.E. 732 (1927) ("The question presented as to the qualification of jurors is one of mixed law and fact, and the finding of the trial court upon that issue will not be set aside unless the error is plainly manifest."). We defer to a trial judge's rulings regarding the qualifications of jurors because the trial judge is able to personally observe the juror's demeanor, assess his/her credibility, and inquire further to determine the juror's bias and/or prejudice. Trial courts are authorized to question potential jurors to ascertain whether they will be unbiased and impartial. *See, e.g.,* W. Va. Code § 56–6–12 (1923) (Repl.Vol.2005) (requiring trial court to examine potential jurors upon party's motion); Syl. pt. 3, *O'Dell v. Miller,* 211 W.Va. 285, 565 S.E.2d 407 (2002) ("When considering whether to excuse a prospective juror for cause, a trial court is required to consider the totality of the circumstances and grounds relating to a potential request to excuse a prospective juror, *to make a full inquiry to examine those circumstances* and to resolve any doubts in favor of excusing the juror." (emphasis added)). Thus,

> [w]here the questions propounded by the trial court are sufficient to test a juror's ability to completely disregard anything he may have heard and read about the case, and to give the defendant a fair and impartial trial, and his answers are so unequivocal and satisfactory as to convince the trial judge of the juror's fairness and impartiality, it is the settled practice not to interfere with the court's finding, unless clearly against the evidence.

Syl. pt. 1, *State v. Toney,* 98 W.Va. 236, 127 S.E. 35 (1925). In other words, "[a] trial judge is entitled to rely upon his/her self-evaluation of allegedly biased jurors when determining actual juror bias. The trial judge is in the best position to determine the sincerity of a juror's pledge to abide by the court's instructions. Therefore, his/her assessment is entitled to great deference." Syl. pt. 12, *State v. Salmons,* 203 W.Va. 561, 509 S.E.2d 842 (1998). *Accord* Syl. pt. 6, in part, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996) ("An appellate court should

interfere with a trial court's discretionary ruling on a juror's qualification to serve because of bias only when it is left with a clear and definite impression that a prospective juror would be unable faithfully and impartially to apply the law."). Mindful of this standard, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

On appeal to this Court, Mrs. Black assigns error to the trial court's denials of her motions to strike prospective juror Dr. Polack for cause. During the voir dire portion of the underlying trial, Mrs. Black twice moved to strike Dr. Polack for cause. Although the trial court expressed concerns about Dr. Polack's impartiality, it nevertheless determined that Dr. Polack was not biased and should not be excused for cause.

Before this Court, Mrs. Black contends that the answers provided by Dr. Polack clearly demonstrate bias or prejudice such that the trial court should have stricken him from the jury panel for cause. Mrs. Black argues further that Dr. Polack's bias was explicit in his answers and that the trial court did not cure this prejudice through its additional questioning. CSX responds that the trial court properly refused to strike prospective juror Dr. Polack for cause because he did not present any bias or prejudice to warrant being stricken for cause. Instead, Dr. Polack testified that he would render his decision based upon objective, scientific evidence and the trial judge's instructions, rather than based upon emotion. CSX additionally contends that because Dr. Polack testified that he would follow the law and base his decision about the facts upon credible evidence, he was not biased, and the trial court properly refused to strike him for cause.

■ A charge that a juror is not impartial is not a matter to be taken lightly. "The object of the law is, in all cases in which juries are impaneled to try the issue, to secure men for that responsible duty whose minds are wholly free from bias or prejudice

... for or against either party in civil cases." Syl. pt. 1, in part, *State v. Hatfield,* 48 W.Va. 561, 37 S.E. 626 (1900). To achieve this goal of a panel of impartial jurors, parties are permitted to question prospective jurors and to challenge those who express bias or prejudice:

> Either party in any action or suit may, and the court shall on motion of such party, examine on oath any person who is called as a juror therein, to know whether he is a qualified juror, or is related to either party, or has any interest in the cause, or is sensible of any bias or prejudice therein; and the party objecting to the juror may introduce any other competent evidence in support of the objection; and if it shall appear to the court that such person is not a qualified juror or does not stand indifferent in the cause, another shall be called and placed in his stead for the trial of that cause. And in every case, unless it be otherwise specially provided by law, the plaintiff and defendant may each challenge four jurors peremptorily.

W. Va.Code § 56–6–12 (1923) (Repl.Vol. 2005).

 When assessing whether a prospective juror is impartial, "[t]he true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court." Syl. pt. 1, *State v. Wilson,* 157 W.Va. 1036, 207 S.E.2d 174 (1974). *Accord* Syl. pt. 1, *Wheeler v. Murphy,* 192 W.Va. 325, 452 S.E.2d 416 (1994) (" ' "The true test to be applied with regard to qualifications of a juror is whether a juror can, without bias or prejudice, return a verdict based on the evidence and the court's instructions and disregard any prior opinions he may have had." *State v. Charlot,* 157 W.Va. 994, 1000, 206 S.E.2d 908, 912 (1974).' Syl. pt. 1, *State v. Harshbarger,* 170 W.Va. 401, 294 S.E.2d 254 (1982)."). Even if a juror professes to be impartial, however, a trial court must still tread cautiously and ascertain whether, in fact, it believes the juror is capable of fairly rendering a verdict based upon the evidence presented at trial.

The relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant. Even though a juror swears that he or she could set aside any opinion he or she might hold and decide the case on the evidence, a juror's protestation of impartiality should not be credited if the other facts in the record indicate to the contrary.

Syl. pt. 4, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996). Therefore, "[i]f a prospective juror makes an inconclusive or vague statement during *voir dire* reflecting or indicating the possibility of a disqualifying bias or prejudice, further probing into the facts and background related to such bias or prejudice is required." Syl pt. 4, *O'Dell v. Miller,* 211 W.Va. 285, 565 S.E.2d 407 (2002). *See also* Syl. pt. 3, *State v. Pratt,* 161 W.Va. 530, 244 S.E.2d 227 (1978) ("Jurors who on *voir dire* of the panel indicate possible prejudice should be excused, or should be questioned individually either by the court or by counsel to precisely determine whether they entertain bias or prejudice for or against either party, requiring their excuse.").

 Where a juror's bias is evident, he/she should be excused for cause. "Once a prospective juror has made a clear statement during *voir dire* reflecting or indicating the presence of a disqualifying prejudice or bias, the prospective juror is disqualified as a matter of law and cannot be rehabilitated by subsequent questioning, later retractions, or promises to be fair." Syl. pt. 5, *O'Dell v. Miller,* 211 W.Va. 285, 565 S.E.2d 407. *Accord* Syl. pt. 1, in part, *State v. Bennett,* 181 W.Va. 269, 382 S.E.2d 322 (1989) ("When individual voir dire reveals that a prospective juror feels prejudice against [a party] which the juror admits would make it difficult for him to be fair, ... the [party's] motion to strike the juror from the panel for cause should ordinarily be granted."). Furthermore, if any doubts remain as to the juror's neutrality, the trial court should err on the side of caution and excuse the prospective juror for cause.

When considering whether to excuse a prospective juror for cause, a trial court is required to consider the totality of the circumstances and grounds relating to a

potential request to excuse a prospective juror, to make a full inquiry to examine those circumstances and *to resolve any doubts in favor of excusing the juror.*

Syl. pt. 3, *O'Dell v. Miller,* 211 W.Va. 285, 565 S.E.2d 407 (emphasis added).

In the case *sub judice,* Dr. Polack clearly expressed a bias against Mrs. Black. Despite his statements that he would render a decision based upon the scientific evidence presented and the trial court's instructions of law, Dr. Polack continued to convey a bias against parties claiming to have been injured by exposure to asbestos and against personal injury attorneys. For example, Dr. Polack stated in his written questionnaire that he would find it difficult to be a juror and to award money damages because he has "*[a] personal bias against personal injury lawyers* and awarding of damages predicated on anything other than pure objective science-I would be willing to listen to the data presented but any decision on my part would be based on medical fact not emotion." (Emphasis added).

He further responded to counsel's questions by saying that his "personal bias is about asbestos, because a lot of the issues about asbestos are not science, and I'm perfectly willing to listen to the data, but I will have to be convinced predicated on scientific information, not emotional information." In response to these comments, Mrs. Black timely and repeatedly moved to strike juror Polack for cause. *See* Syl. pt. 5, *McGlone v. Superior Trucking, Inc.,* 178 W.Va. 659, 363 S.E.2d 736 (1987) ("Where a new trial is requested on account of alleged disqualification or misconduct of a juror, it must appear that the party requesting the new trial called the attention of the court to the disqualification or misconduct as soon as it was first discovered or as soon thereafter as the course of the proceedings would permit; and if the party fails to do so, he or she will be held to have waived all objections to such juror disqualification or misconduct, unless it is a matter which could not have been remedied by calling attention to it at the time it was first discovered. *Flesher v. Hale,* 22 W.Va. 44 (1883)[, *overruled on other grounds by Proudfoot v. Dan's Marine Service, Inc.,* 210 W.Va. 498, 558 S.E.2d 298 (2001) ].").

Although the trial court also expressed its doubts as to Dr. Polack's impartiality, it nevertheless attempted to rehabilitate Dr. Polack by questioning him further:

> The Court: The ultimate question, of course, Doctor, is simply this-you know as much about the case right now as I know. Based upon what I told you, do you believe that you'll be able to sit as a juror in this case, listen to the evidence from the witness stand, the law that will be given to you at the close of the case, and you're going to be asked to marry the facts as you determine them to the law as I give them.
>
> Dr. Polack: Yes.

After Mrs. Black renewed her motion to strike Dr. Polack for cause, the trial court again inquired of him, as follows:

> The Court: So we get back really to, any verdict that you would reach would be based upon the evidence from the witness stand and the law given you by the Court?
>
> Dr. Polack: That's correct.

We previously have cautioned against the use of such "magic questions," though, when it is clear that a potential juror is partial.

> Trial judges must resist the temptation to "rehabilitate" prospective jurors simply by asking the "magic question"[3] to which jurors respond by promising to be fair when all the facts and circumstances show that the fairness of that juror could be reasonably questioned. "A trial judge should err on the side of caution by dismissing, rather than trying to rehabilitate, biased jurors because, in reality, the judge is the only person in the courtroom whose primary concern, indeed primary duty, is to ensure the selection of a fair and impar-

---

**3.** "After you hear the evidence and my charge on the law, and considering the oath you take as jurors, can you set aside your preconceptions and decide this case solely on the evidence and the law? Not so remarkable, jurors confronted with this question from the bench almost inevitably say, 'yes.' " *Walls v. Kim,* 250 Ga.App. 259, 259, 549 S.E.2d 797, 799 (2001)[, *aff'd,* 275 Ga. 177, 563 S.E.2d 847 (2002) ].

tial jury." *Walls v. Kim*, 250 Ga.App. 259, 260, 549 S.E.2d 797, 799 (2001)[, *aff'd*, 275 Ga. 177, 563 S.E.2d 847 (2002) ].

*O'Dell*, 211 W.Va. at 290, 565 S.E.2d at 412.

■ In view of the totality of the circumstances surrounding Dr. Polack's voir dire, it is apparent that he was not an impartial juror and that the trial court should have excused him for cause. Syl. pt. 3, *O'Dell v. Miller*, 211 W.Va. 285, 565 S.E.2d 407. Because the trial court denied Mrs. Black's repeated motions to so strike Dr. Polack and, instead, required her to use one of her peremptory strikes to remove him from the jury panel, we find that the trial court abused its discretion. We further find that Mrs. Black was prejudiced by this erroneous ruling insofar as the jury who ultimately heard and decided her case returned an adverse verdict. *See Doe v. Wal–Mart Stores, Inc.*, 210 W.Va. 664, 670, 558 S.E.2d 663, 669 (2001) ("A trial court's determination as to whether to strike a juror for cause will be 'reverse[d] only where actual prejudice is demonstrated.'") (quoting *State v. Miller*, 197 W.Va. at 605, 476 S.E.2d at 552 (additional citation omitted)). Accordingly, we reverse the trial court's ruling denying Mrs. Black's motion for a new trial and remand this matter for a new trial.

## IV.

### CONCLUSION

For the foregoing reasons, the April 7, 2006, order of the Circuit Court of Kanawha County is hereby reversed, and this case is remanded for a new trial.

Reversed and Remanded.

BENJAMIN, Justice, dissenting.

Where, exactly, did Judge Recht go wrong? Apparently, according to the Majority, Judge Recht committed an error worthy of reversal and the awarding of a new trial because he refused to strike for cause a physician from the jury pool when the physician testified that he would decide the case based upon the facts and law, as instructed by the trial court, and not upon emotion. Judge Recht committed this grave error because, based upon everything before him, he believed the physician—something the Majority of this Court sitting on high without the benefit of having sat where Judge Recht sits, apparently is unwilling to do. How dispiriting to our system of justice that a citizen who will decide a case upon the law, as instructed by the trial court, and the facts, without regard for emotion, should be deemed by this Court to be unfit to serve as a juror in this State. Sensibility and reason require that such qualities should be the gold standard for juror qualification. The Majority of this Court apparently disagrees.

The Majority cites ample authority in its opinion to support the proposition that a trial judge's decision to disqualify a juror for bias or prejudice is committed to the trial court's sound discretion and will not be reversed absent manifest error. *See,* Majority Slip Opinion, pp. 6–7. As stated by the Majority, "[w]e will defer to a trial judge's ruling regarding the qualifications of jurors because the trial judge is able to personally observe the juror's demeanor, assess his/her credibility and inquire further to determine the juror's bias and/or prejudice." Majority Slip Opinion, p. 6. The Majority, however, ignores its own directive to defer to Judge Recht's reasoned determination[1] and substitutes its judgment for his, without the corresponding benefit of having observed Dr. Polack as he responded to the trial court's and counsels' inquiries during the voir dire process. Thus, the importance of the actual demeanor of the potential juror and a learned judge's considered determination of the same falls victim to this Court's long-standing penchant for redefining standards of review when the allure of authoritative appellate second-guessing beckons.

Although the Majority cites a number of passages from the voir dire of Dr. Polack in its opinion, it omitted several that are significant—significant not only for their presence in the record, but also for their absence from the Majority opinion. In the first, Dr. Po-

---

1. A determination, I note, borne of Judge Recht's long-standing, dedicated service to the justice system in this State both as a distinguished trial judge and a member of this Court.

lack rejects the notion that he would allow his understanding of science, rather than the law as instructed by the trial court, to guide his decision. In response to questioning by Appellee's counsel, Dr. Polack testified:

Mr. Lafferre: Do you think that what you think about sound science as being the basis for decision-making—I don't want to put words in your mouth, but that's my understanding of what you said just a moment ago are you say that that would be your guide in this case, as opposed to the judge's instructions of law?

Dr. Polack: *My guide must be the judge's instructions in law.*

(Emphasis added). This exchange was in follow-up to the initial questioning by Appellant's counsel set forth on pages 2–3 of the Majority slip opinion. The Majority also neglected to include Judge's Recht's stated reasons for denying the Appellant's motion to strike Dr. Polack for cause, the reasoning implicitly rejected by the Majority herein. After the initial voir dire of Dr. Polack in chambers, Judge Recht explained his reasons for denying Appellant's motion stating:

The Court: Dr. Polack probably is a poster child for the reason we have voir dire and still accommodate the teachings of O'Dell. He has been rather forthright, exactly how he feels.

But in the ultimate question, he will be able to be a fair juror; but you certainly have enough information in order to—if you feel so inclined, to exercise your peremptory challenge; that's why we have voir dire. But I don't think any of his answers would disqualify him for cause.

I thought they might. And if you just look at the questionnaire itself, it came perilously close, but I just don't think it's enough. So your objection will be overruled, and your objection saved.

Later in the voir dire process, Appellant renewed her motion to strike Dr. Polack for cause. Prior to the questioning cited by the Majority on pages 4–5 of its opinion, the trial court made the following significant statements, which, like the above passage, were not acknowledged by the Majority:

The Court: Certainly, the first response that he has a bias against personal injury lawyers is a strong statement, extremely strong statement. The question is: What would it take to overcome that bias?

Mr. Lafferre: I'll observe, he didn't say he was biased against plaintiffs themselves—

The Court:—appreciate that. But that's my point, is what it would take to overcome the bias as against plaintiffs' lawyers? We don't know that. And I don't think that question was asked.

Mr. Daley: I don't believe, under O'Dell, it needs to be. It's quite clear; it's a clear statement, and that further questioning is not going to help.

The Court: If it stopped there, I'd definitely agree with you, definitely agree with you. He then went on to modify it, where basically he's saying that he is a man of science and will not be swayed by emotion. It's that Jeffersonian argument of head versus heart that we all learned while we were in grade school.

Dr. Polack is more head than heart, but I'm going to ask him that question. I really need to know it. It wasn't asked. I think its because of it's—potential impact, I think its only fair, so . . .

Thereafter, in responding to Judge Recht's questioning, Dr. Polack testified that credibility on the part of the lawyer would overcome this perceived bias and that he would decide the case upon the law and evidence. After considering Dr. Polack's response, Judge Recht denied Appellant's renewed motion to strike Dr. Polack stating "I still think he's not excusable for cause, notwithstanding the responses he gave in the questionnaire, because I think his verbal responses transcend that."

The record before this Court simply does not support the Majority's conclusion that Judge Recht abused his considered discretion in refusing to strike Dr. Polack for cause. Of even more concern, I fear that the Majority's opinion in this matter may be viewed in the future as establishing a standard in West Virginia that a juror who states

he or she will rely upon the facts and the law to decide a case—and not upon emotion—should be, or even may be, subject to being excused for cause.

Finally, I must additionally take issue with the Majority's finding of prejudice arising from Judge Recht's failure to strike Dr. Polack for cause. As recognized by the Majority, actual prejudice must be demonstrated before a trial court's ruling on a motion to strike a juror for cause may be reversed. *State v. Miller,* 197 W.Va. 588, 605, 476 S.E.2d 535, 552 (1996). What then did the Majority deem sufficient to demonstrate the prejudice necessary to reverse Judge Recht's decision not to strike Dr. Polack for cause? The jury's adverse verdict? What the Majority fails to admit is that Dr. Polack ultimately did not sit on the jury as Appellant utilized a preemptory strike to remove him. Thus, he could not have influenced the jury's deliberations. Notwithstanding his absence, the jury that heard the evidence still found no causation whatsoever to support Appellant's claim. It is pure speculation by the majority that the juror who would have replaced Dr. Polack in the jury pool had he been struck for cause may have impacted the ultimate verdict. By simply presuming prejudice and equating that prejudice to an adverse jury verdict, the majority has effectively removed from our jurisprudence the appealing party's burden to show prejudice.

Judge Recht did not abuse his discretion in refusing to strike Dr. Polack for cause. I furthermore disagree with the Majority that the mere fact of an adverse jury verdict is sufficient evidence of prejudice to reverse a trial court's discretionary ruling upon a juror's qualification where there is no objective evidence of conflict, such as a significant relationship to a party or a party's employee or relative, but only speculation as to that juror's beliefs. Accordingly, I dissent.

STARCHER, J., concurring.

From the very beginning of the jury selection process, the potential juror at issue in this case, Dr. Polack, demonstrated clear bias and prejudice in his statements. In *O'Dell v. Miller,* 211 W.Va. 285, 565 S.E.2d 407 (2002), this Court made a firm rule about prospective jurors who exhibit prejudice or bias about a case: the juror is, as a matter of law, disqualified. As we said in Syllabus Point 5 of *O'Dell:*

> Once a prospective juror has made a clear statement during *voir dire* reflecting or indicating the presence of a disqualifying prejudice or bias, the prospective juror is disqualified as a matter of law and cannot be rehabilitated by subsequent questioning, later retractions, or promises to be fair.

This is not a discretionary test which requires subtle balancing by a trial judge, as the dissenting opinion might suggest. It is an absolute, mandatory, black-letter, and therefore easy-to-apply rule.

The dissenting opinion opens with a question asking plaintively, where did the trial judge go wrong? The answer is that the trial judge—with some help from counsel for the defendant—forgot that Syllabus Point 5 of *O'Dell* is a mandatory rule. Dr. Polack gave statements evidencing a clear, but general, dislike of litigating plaintiffs and their attorneys, and a clear distrust of information about the dangers of exposure to asbestos. In other words, Dr. Polack indicated a prejudice against one of the litigants, and a bias to reject that side's evidence. As a matter of law, once Dr. Polack issued his statements of prejudice and bias, he should have been excused immediately.

The dissenting opinion puts a nice spin on Dr. Polack's subsequent, rehabilitative statements, suggesting that they should have led the majority to believe that what Dr. Polack *really* meant to say was that he would set aside his previously expressed prejudices and biases and would follow the judge's instructions about the law. And this is where the dissenting opinion goes wrong. The whole point of *O'Dell* was to prevent judges and attorneys from rehabilitating prospective jurors who clearly have ingrained prejudices and biases. Specifically, *O'Dell* was meant to preclude rehabilitation through the use of "magic phrases"—rehabilitation that usually comes in the form of a question from the attorneys, not the trial judge. A question like "even though you just said you're biased

and prejudiced, will you at least act like you're fair and act like you're following the law when you're ruling for my client?" As we said in *O'Dell:*

> Trial judges must resist the temptation to "rehabilitate" prospective jurors simply by asking the "magic question" to which jurors respond by promising to be fair when all the facts and circumstances show that the fairness of that juror could be reasonably questioned.

*O'Dell,* 211 W.Va. at 290, 565 S.E.2d at 412. In sum, the dissenting opinion ignores the whole point of *O'Dell* by suggesting that this Court should have approved of the defense lawyer's and trial judge's resurrection of Dr. Polack after he indicated his bias and prejudice.

I am a stout believer in and defender of democracy, and I believe that juries are as pure a representation of direct democracy as you can have in our republic. The members of a jury—like our elected representatives—must be ready to render service with an open mind, ready to recognize their predispositions but ready to set them aside when they are in conflict with the facts or the law. But when a person expresses a clear prejudice against one party, or a clear bias in favor of certain theories or forms of evidence, and does nothing to reflect on the possible folly of holding the prejudice or bias regardless of the facts, then the person has no business being qualified as a juror. Circuit judges must, above all else, preserve the integrity and vitality of the jury system by seating only those prospective jurors who demonstrate—by plain expression rather than recitation of a "magic phrase"—clear impartiality.

The potential juror in this case, Dr. Polack, demonstrated clear bias and prejudice. *O'Dell* mandated that the potential juror be excused for cause, as a matter of law. The fact that the trial judge did not disqualify Dr. Polack after the defense lawyers elicited a few words of impartiality (while everything else he said was a plain expression of predisposition) violated the spirit of *O'Dell*.

I therefore respectfully concur with the majority opinion's decision to reverse the trial court's orders, and to remand the case for a new trial.